UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN ARMANDO VALENZUELA STIRK )
)
Petitioner,                     )
)
)
)
v.                                )    Civil Action No.   8:20-cv-02894
)
JESSICA LIZBETH CRUZ LOPEZ        )
)
Respondent.                 )
_____ /

**VERIFIED PETITION FOR THE RETURN OF A MINOR CHILD TO
MEXICO AND ISSUANCE OF SHOW CAUSE ORDER**

**Pursuant to The Convention on the Civil Aspects of International Child Abduction,
done at The Hague on October 25, 1980 and the International Child Abduction
Remedies Act, 42 U.S.C. § 11601, et seq.**

Petitioner MARTIN ARMANDO VALENZUELA STIRK ("Petitioner," "the father"

or "Mr. Valenzuela"), through the undersigned counsel, brings this Petition and request for

Issuance of Show Cause Order against JESSICA LIZBETH CRUZ LOPEZ ("Respondent"

or "the Mother" or "Ms. Cruz"), seeking the expedited return to Mexico of their five-year-old

daughter, M.V.C. ("M.V.C." or "the Child").[1]  Petitioner and Respondent have known each

other since 2012 and they lived together in Mexico prior to marriage and prior to the birth of

their Child.  The parties were living together in Mexico at the time of M.V.C.'s conception

and birth and, following M.V.C.'s birth, Petitioner and Respondent married to each other in

---

[1] In compliance with Federal Rule of Procedure 5.2(a) and Local Rule 5.2(a), only the initials of
the Child are included in this petition and her name has been redacted from all exhibits.  Also,
only the Child's year of birth is disclosed.  The month and date of birth have been redacted from
all exhibits.

Mexico on July 28, 2017 and they continued living together with M.V.C. in Mexico as an intact family until such time as the parties initiated their divorce in Mexico in or about October 26, 2018.  The parties divorced in Mexico by mutual consent with their final judgment of divorce was entered in a Mexican court in March 6, 2019.

Petitioner, Respondent, and the minor child are all citizens of Mexico.  The minor child was born in Plant City, Florida, therefore, the child has a dual citizenship in the United States and Mexico.  However, the minor child resided in Mexico with Petitioner and Respondent and was enrolled in and actively attending school in Mexico.

The parties' final judgment of divorce entered March 6, 2019 provides, in relevant part that "the full custody of our minor daughter named [M.V.C.] will be under the mother JESSICA LIZBETH CRUZ LOPEZ at my address located on Calle Rio Fuerte Num. 4327 in Fraccionamiento Cordova Americas in this city" and that the father MARTIN ARMANDO VALENZUELA STIRCK has regular visitation, access, and time with M.V.C. weekends every fifteen days, picking the child up from "the address located on Calle Rio Fuerte Num. 4327 in Fraccionamiento Cordova Americas" as well as visitation, access, and time with M.V.C. on alternate years during summer vacation and Christmas vacation/new years.

Mr. Valenzuela never consented for M.V.C. to live outside of the country of Mexico. Until M.V.C.'s wrongful removal to the United States, Mr. Valenzuela was actively exercising his parental rights and visitation/time/access with M.V.C.  As detailed more fully herein, Mr. Valenzuela never consented to M.V.C. going to the United States, and specifically Hillsborough County, Florida in January 2020.  Much to his surprise, Ms. Cruz sent Mr. Valenzuela a message through WhatsApp on or about January 14, 2020 in which she informed him that she was in the city of Dallas, Texas with M.V.C.  The next day, on

January 15, 2020, Ms. Cruz sent Mr. Valenzuela another message through WhatsApp informing him that she and M.V.C. were in Plant City, Hillsborough County, Florida and she did not know if she was going to be returning to Juarez, Chihuahua, Mexico and she did not know when she would be returning to Mexico at all.  After receiving these messages, Mr. Valenzuela went to the child's school in Juarez, Chihuahua, Mexico and was informed by the school that M.V.C. had not been attending classes since January 8, 2020.  On January 16, 2020, Mr. Valenzuela initiated an action for the return of M.V.C. to Mexico.  Mr. Valenzuela has attempted to communicate with Ms. Cruz, the minor child, and Ms. Cruz's family who lives in Hillsborough County, Florida, and he has not received any response.

Because Ms. Cruz has proven that she is a flight risk by absconding with the Child without notice to Mr. Valenzuela, by failing to abide by the terms of the parties' Final Judgment of divorce in Mexico, because the child is a citizen of the United States, and because Ms. Cruz's family has the resources to assist her in further absconding with the child, Mr. Valenzuela is very concerned that Ms. Cruz will flee to another location in the United States or elsewhere upon finding out about this Petition.  Therefore, given the circumstances at this time, Petitioner respectfully requests that the Court direct Respondent to surrender all of Respondent's and M.V.C.'s travel documents, including but not limited to passports (from Mexico and/or the United States), visas or Green Cards, and that the District Court hold the documents in safe-keeping for the pendency of these proceedings.

### The Hague Convention

1.      This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hauge on October 25, 1980 ("Hague Convention"), a copy of which is attached hereto as **EXHIBIT "A"**, and the International

Child Abduction Remedies Act ("ICARA" or "the Act").  The Convention came into effect between the United States and Mexico on March 18, 1986.

2.      The objects of the Hague Convention are as follows:  "(1) to secure the prompt return of children wrongfully removed or retained in any Contracting States, and (2) to ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States."  Convention, Article 1.  Pursuant to Article 11 of the Convention, "judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children."  Thus, Petitioner asks for expedited review and hearing of this Petition.

3.      Under the Convention of the Act, "the role of this Court is not to determine the issue of custody, but only to order the return of a child wrongfully removed or retained outside the country of habitual residence."  *Hanley v. Roy*, 485 F.3d 461, 650 (11th Circ. 2007)("District court considering an ICARA petition cannot decide the underlying custody dispute, but only has jurisdiction to decide the merits of the wrongful removal claim.")  "The underlying premise of the Hague Convention is that a child's country of habitual residence is the place where decisions relating to custody and access are best decided."  *In re Ahumada Cabrera*, 323 F.Supp.2d 1303, 1310 (S.D.Fla. May 18, 2004).

4.      The Court must return M.V.C. to Mexico because, under the Convention and the Act, a preponderance of the evidence establishes that:  (1) M.V.C. is a minor child under the age of sixteen, (2) Mexico was M.V.C.'s habitual residence at the time of the wrongful removal, (3) Mr. Valenzuela was exercising his Mexican custody rights at the time the Respondent wrongfully removed M.V.C. from Mexico, (3) Mr. Valenzuela and the Respondent did not share any parental intent to permanently remove M.V.C. from her

4

habitual residence in Mexico to the United states; and, (4) none of the narrow exceptions to mandatory return under the Hague Convention are appropriately applied in the instant case. Mexico is the country that should make any custody or access determinations.

5.      Respondent has behaved in a manner that plainly indicates that she has no intention of returning to Mexico or even allowing Mr. Valenzuela to maintain regular, meaningful contact with his daughter.  Respondent's past actions, present circumstances, and clear intentions render her a significant flight risk.   For these reasons, Mr. Valenzuela respectfully requests that the Court:

    a.  Issue a warrant directing the United States Marshals Service or other law enforcement authority to serve this Petition upon Respondent, and transport Respondent and M.V.C.'s travel documents to the District Court for safe-keeping during the pendency of these proceedings; and

    b.  Issue an order that Respondent and the Child remain within the jurisdiction of this Court pending resolution of this matter; and

    c.  Issue an order that Respondent appear at an evidentiary hearing as soon as the Court is available, and show cause as to why the Child should not be returned to Mexico in the company of Petitioner or other Court-approved travel associate; and

    d.  Order that the Child be returned forthwith to Mexico in the company of Petitioner or other Court-approved travel associate.

**Jurisdiction and Venue**

6.      This Court has jurisdiction pursuant to 42 U.S.C. § 11603, which provides jurisdiction to state and federal courts because this case involves the removal and retention of a child under the age of sixteen from her habitual residence in Juarez, Chihuahua, Mexico, to the United States of America.

7.      Venue is proper in this Court because the Respondent and Child are both located in Plant City, Hillsborough County, Florida, which is in the Middle District of Florida.

### Status of the Parties and Background Factual Information

8.      The Petitioner, MARTIN ARMANDO VALENZUELA STIRK, and the Respondent, JESSICA LIZBETH CRUZ LOPEZ, are the natural parents of M.V.C., a minor child.  Although they were not married to each other at the time of the minor child's birth, they were living together and both parties' names appear on the minor child's birth certificate, a true and accurate redacted copy of which is attached as **EXHIBIT "C"**. Subsequently, Mr. Valenzuela and Ms. Cruz married each other on July 28, 2017. A true and accurate copy of their marriage license is attached hereto as **EXHIBIT "B"**.  Following the birth of M.V.C., Mr. Valenzuela, Ms. Cruz, and M.V.C. all resided together in the marital home as an intact family.  Mr. Valenzuela provided financial support to M.V.C. throughout the parties' marriage including he increased his financial support for M.V.C.'s schooling so that he could drop her off and pick her up and participate in her schooling.

9.      M.V.C. was born in South Florida Baptist Hospital in Plant City, Hillsborough County, Florida in 2015 and is presently five years of age.  M.V.C. will turn sixteen in 2031. A redacted copy of M.V.C.'s birth certificate is attached hereto as **EXHIBIT "C"**.

10.     Mr. Valenzuela's paternity has never been questioned.  His name was included in M.V.C.'s birth certificate upon her birth.  Mr. Valenzuela has regularly exercised his fatherly rights since her birth, including enjoying overnight time with M.V.C. continuously while the parties were married and living as in intact family and, upon the parties' divorce, in accordance with the terms of the parties' consent Final Judgment.  He continued to regularly

exercise his fatherly rights with M.V.C. up until Ms. Cruz unilaterally cut off communication between father and daughter around January 2020 at which time Respondent wrongfully removed M.V.C. from Mexico.  Mr. Valenzuela fulfilled all financial obligations due and owing for M.V.C. pursuant to the terms of the parties' consent Final Judgment of divorce.  A true and accurate copy of the parties' consent Final Judgment is attached hereto as **EXHIBIT "D"**.

11.     The parties' final judgment of divorce entered March 6, 2019 provides, in relevant part that "the full custody of our minor daughter named [M.V.C.] will be under the mother JESSICA LIZBETH CRUZ LOPEZ at my address located on Calle Rio Fuerte Num. 4327 in Fraccionamiento Cordova Americas in this city" and that the father MARTIN ARMANDO VALENZUELA STIRCK has regular visitation, access, and time with M.V.C. weekends every fifteen days, picking the child up from "the address located on Calle Rio Fuerte Num. 4327 in Fraccionamiento Cordova Americas" as well as visitation, access, and time with M.V.C. on alternate years during summer vacation and Christmas vacation/new years.

12.     Ms. Cruz's parents live in Plant City, Hillsborough County, Florida.  They run a business for Mexican workers in the farming industry.  Ms. Cruz worked for her parents' business remotely while living in Juarez, Chihuahua, Mexico.  On prior occasions, Ms. Cruz and Mr. Valenzuela came to visit Ms. Cruz' parents, including at the time of M.V.C.'s birth. However, the parties had never discussed permanently relocating to Plant City, Hillsborough County, Florida and Mr. Valenzuela never agreed to a permanent relocation outside of Juarez, Chihuahua, Mexico.

13.     Mr. Valenzuela is the Child's natural father.  He was born in Mexico in 1984 and continues to reside and work in Juarez, Chihuahua, Mexico.  He has lived in Mexico his entire life and is a Mexican citizen.  Mr. Valenzuela attended M.V.C.'s birth and his name was immediately added to M.V.C.'s birth certificate.  Mr. Valenzuela and Ms. Cruz gave M.V.C. Mr. Valenzuela's surname.  Mr. Valenzuela's paternity has never been questioned and his parental responsibilities and rights have never been terminated.  As of the time of the wrongful removal, M.V.C. regularly enjoyed time with Mr. Valenzuela and a meaningful relationship with him.  Mr. Valenzuela lives near his family in Mexico and M.V.C. enjoys a meaningful relationship with her extended paternal family.

14.     Respondent is the Child's natural mother.  Respondent was born in Mexico and is a Mexican Citizen.  She continuously lived in Juarez, Chihuahua, Mexico until her abrupt and surreptitious departure with M.V.C. in January 2020.  She has worked for her parents' business remotely for years.  Unlike other visits in the past, Ms. Cruz did not give Mr. Valenzuela prior notice nor obtain his prior consent to visit her parents in January 2020.  Ms. Cruz's visit to her parents in January 2020 was so abrupt and unplanned that she waited initially mislead Mr. Valenzuela about her and M.V.C.'s whereabouts in a text message on January 14, 2020, a true and accurate copy of which is attached hereto as **EXHIBIT "E"** notified Mr. Valenzuela two days later days of her intent not to return to Mexico with M.V.C, a true and accurate copy of which is attached hereto as **EXHIBIT "F"** and did not unenroll M.V.C. from her school in Juarez, Chihuahua, Mexico.

15.     M.V.C. is a minor child who was born and has lived her entire life in Mexico.  M.V.C. enjoys a very close relationship with her paternal family since her birth.  She spent the beginning years of her life living with Mr. Valenzuela and Ms. Cruz as an intact family

and has spent significant and meaningful time with her extended paternal family.  M.V.C. was enrolled in and regularly attended school in Juarez, Chihuahua, Mexico until the time of her wrongful removal to the United States in January 2020.  The school notified Mr. Valenzuela on or about January 16, 2020 that M.V.C. had not attended school since January 8, 2020. A true and accurate copy of a letter from the child's school confirming her enrollment is attached hereto as **EXHIBIT "G".**  Prior to her wrongful removal, M.V.C. took part in the usual family and social activities in Mexico that would be expected of a young child.  Ms. Cruz has prohibited any video, telephone, or other contact between Mr. Valenzuela and M.V.C. since January 2020.

16.    Mr. Valenzuela has financially supported M.V.C. since her birth.  He has provided M.V.C. with various provisions and equipment including clothing, cots, and car seats.  Since the parties' divorce, Mr. Valenzuela has made regular monetary payments for M.V.C.'s support based on the parties' agreed-upon amount.  In addition to purchasing the normal necessary supplies for a young child such as food and clothes, Mr. Valenzuela has given her gifts for holidays and special occasions.

## Wrongful Removal of Child by Respondent; and Lack of Shared Parental Intent to Remove M.V.C. from Mexico

17.    Ms. Cruz did not give Mr. Valenzuela prior notice, nor did she receive his consent prior to removing M.V.C. from Mexico in January 2020.  Ms. Cruz did not un-enroll M.V.C. from her school in Mexico.  Ms. Cruz has cut off all communication between Mr. Valenzuela and M.V.C. since her wrongful removal of M.V.C. from Mexico.

18.    Since notification of their surreptitious departure mid-January 2020, Mr. Valenzuela has repeatedly requested for the return of M.V.C. and attempted to speak with

Respondent and M.V.C. via WhatsApp messaging, their normal means of messaging, and Ms. Cruz has refused all contact except for a single text message on January 22, 2020.  Mr. Valenzuela has continued to request communication with his daughter; however, Ms. Cruz ignored all of his requests and has ceased all communication with Mr. Valenzuela.  Mr. Valenzuela took swift action on January 16, 2020 to initiate the proper proceedings in Mexico for the child's return once he learned of her removal.

19.     Respondent's wrongful removal of the Child violates Mr. Valenzuela's parental rights as set forth in the parties' consent Final Judgment of divorce, a true and accurate copy of which is attached hereto as **EXHIBIT "D"**.

20.     Respondent's wrongful removal of the Child violates the Civil Code of the State of Chihuahua, Mexico.  A true and accurate copy of the Civil Code for the State of Chihuahua, Mexico is attached hereto as **EXHIBIT "H"**.  The code provides, in relevant part:

> **Article 391**.   The Parental authority over the children of marriage is exercised:  I.  For the father and the mother…
>
> **Article 393**.  In the case of separation of those who exercise parental authority, they may agree to the terms of their exercise, particularly with regard to custody and custody of minors.  If there is a disagreement, the judge will resolve the matter by hearing, where appropriate, the Public Prosecutor's Office…
>
> **Article 394**.  Those who exercise parental authority even if they do not have custody, have the right of coexistence with their descendants, unless there is danger to them.   The personal relationships between the minor and his relatives cannot be prevented without just cause.  IN the case of opposition at the request of any of them, the judge of the family will resolve the conduct in the best interests of the child.  Only by court order may suspend or lose the right of coexistence referred to in the previous paragraph, as well as in cases of suspension or loss of

parental authority, according to the modalities that is for its existence is established in the agreement or resolution judicial.

[…]

**Article 398**.  As long as the child remains subject to parental authority, he may not leave the house of those who exercise it without permission from them or by decision of competent authority.  The removal or retention of the child outside the place of habitual residence, without the authorization of those who are exercising parental authority or have custody, will entitle them to the restitution procedure established in the Code of Civil Procedure.  The illegal conduct of the abductor or retainer will result in the loss of the rights they have with regard to the child.

### Exigent Circumstances Which Require Respondent to Surrender Travel Documents During the Pendency of These Proceedings

21.    As outlined above, Respondent has unilaterally removed M.V.C. in the United States, cut off communications with Mr. Valenzuela, unilaterally impeded communication between M.V.C. and Mr. Valenzuela, refused to disclose M.V.C.'s location, and refused to maintain Mr. Valenzuela informed of M.V.C.'s health, welfare, education, and safety.  Ms. Cruz's parents live in Florida and run a business for Mexican agricultural workers.   The minor child is a dual citizen of the United States and Mexico.  Ms. Cruz has the ability to abscond further with M.V.C.  She presents a real flight risk based on her willingness to abscond with the child.  The Child is five years old, so she does not have any ties binding her to this area.  Ms. Cruz owns no real property and, upon information and has historically worked remotely, so she can work from anywhere in the world; therefore, her ties with this area are minimal.  There is a very high likelihood that when notified of these proceedings the possibility of the Child's return to Mexico for a custody determination by the proper Mexican authorities, Respondent will attempt to abscond with the child again.

22.     This Court, "[i]n furtherance of the objectives of… the Convention… may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition."  42 U.S.C. § 11604.  Where Mr. Valenzuela continues living and working in Mexico, Petitioner believes the most effective way to insure that Respondent does not further remove or conceal M.V.C. is to order that Respondent and M.V.C. do not leave the jurisdiction of this Court, and to order that Respondent surrender her and M.V.C.'s travel documents to the United States Marshals Service to be delivered to and held by the District Court during pendency of these proceedings.

23.     In addition. Petitioner requests that this Court set an expedited hearing on this Petition.

**Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act**

24.     The details regarding M.V.C. that are required to be provided under the UCCJEA are as follows:

a.      The present address of the child is, upon information and belief, Plant City, Hillsborough County, Florida.

b.      Prior to her retention, M.V.C. lived in Mexico since her birth in 2015.

c.      The only information that Mr. Valenzuela has of any custody proceeding concerning the child is the parties' consent divorce.  A copy of the consent Final Judgment is attached hereto as **EXHIBIT "D"**.  Mr. Valenzuela has no knowledge of any custody proceeding concerning the child currently pending in any court of this or any other state.

d.      Mr. Valenzuela does not know of any person or institution not a party to these proceedings who has physical custody of the child or claims to have rights or parental responsibilities, legal or physical custody of, or visitation or parenting time with the Child.

**Notice of Hearing**

25.      Pursuant to 42. U.S.C. § 11603(c), Respondent will be given notice of any hearing in accordance with Fla. Stat. § 61.158.

**Attorney's Fees and Costs Pursuant to Convention Article 26 and 42 U.S.C. § 11607**

26.      While undersigned counsel has agreed to represent Mr. Valenzuela *pro bono,* Mr. Valenzuela will incur expenses as a result of the wrongful removal of M.V.C. including, but not limited to, court costs and travel expenses.  Mr. Valenzuela will submit a copy of the total fees and expenditures as soon as practicable and may amend those fees and costs from time to time, according to proof and in light of further expenditures required because of this wrongful retention.

27.      Mr. Valenzuela respectfully requests that this court award all legal costs and fees and suit monies incurred to date as required by 42 U.S.C. § 11607, reserving jurisdiction over further expenses.

**Relief Requested**

**WHEREFORE**, MARTIN ARMANDO VALENZUELA STIRK, respectfully request the following relief:

A.      That this Court issue an order directing the prompt return of the Child to Mexico in accordance with Petitioner's rights of custody under the laws of Mexico; and

13

B.     That this Court issue an Order prohibiting the removal of the Child from the jurisdiction of this Court and the taking into safe-keeping the Respondent's and Child's passports and travel documents during the pendency of the case; and

C.     That this Court issue an Order directing that the United States Marshals Service serve the Petition and any Orders of this Court related to the Petition on Respondent, and take into custody Respondent and M.V.C.'s travel documents to be delivered to the District Court pending the resolution of these proceedings; and

D.     That this Court issue an Order directing that the name of the Child be entered into the National Police Computer System (N.C.I.C.) missing children's section forthwith; and

E.     That this Court issue an Order directing the Respondent to pay the Petitioner's reasonable legal fees, costs and expenses; and

F.     That this Court grant any such further relief as justice and the Petitioner's cause may warrant.

## VERIFICATION

**I, MARTIN ARMANDO VALENZUELA STIRK, solemnly declare and affirm, under the penalties of perjury and the laws of the United States of America, that the content of the foregoing Petition is true to the best of my knowledge and belief.**

Dated: _12/01/2020_____          MARTIN ARMANDO VALENZUELA STIRK_____
                                         MARTIN ARMANDO VALENZUELA STIRK

Respectfully submitted this __4th__ day of December, 2020.

Kay Family Law PLLC

_s/ Sarah E. Kay_____
SARAH E. KAY, ESQ., BCS
PO Box 261501
Tampa, FL 33685-1501
Ph: (813) 520-2700
Fax: (813) 413-6899
sarah@kayfamilylaw.com
service@kayfamilylaw.com
Florida Bar No.: 83831
Counsel for Petitioner